## DEVAUGHN vs. HEATH.

[TRESPASS QUARE CLAUSUM FREGIT.]

1. *Vindictive damages.*—In trespass *quare clausum fregit*, a charge to the jury, asserting that they can not give vindictive damages, "unless they believe, from the evidence, that the defendants maliciously entered upon the plaintiff's lands, in a rude, aggravating, or insulting manner," is erroneous, because it improperly restricts the standard of liability.

2. *Gift to slave*—There is no statute or rule of law in this State, which prohibits a gift of old clothes, or other articles harmless in their nature, to a slave, without the knowledge or consent of his master; but, the title and possession, on the delivery of the articles to the slave, must be referred to the master.

APPEAL from the Circuit Court of Chambers.
Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by James Heath, against Samuel Devaughn, George W. Devaughn, Joshua Bussey, and Washington Bussey, to recover damages for a trespass on the plaintiff's lands. It appeared from the evidence adduced on the trial, that one of the Devaughns suspected the plaintiff of trading with one of his slaves, and laid a snare to catch him, by sending the slave to the plaintiff's house by night, with a piece of meat to sell, while the defendants lay hidden within hearing of the conversation which might ensue. The slave, however, sent information of the plot to the plaintiff; and when the party approached the plaintiff's house, one Hammond, a young man living in the plaintiff's house, secreted himself in the cotton, near the path by which they came, and recognized the defendants as the persons composing the party; and when the slave knocked at the door, and said that he had a piece of meat to sell, the plaintiff came out, and ordered him off. The plaintiff's dogs were aroused by the party in ambush, and began to bark at them; and when the plaintiff called out "Who's there"? the defendants ran off; but one of

them was overtaken by the plaintiff and Hammond. Hammond, who was introduced as a witness by the plaintiff, testified to the information which the plaintiff received of the defendants' plot, and to the facts which occurred on the plaintiff's premises on the occasion referred to. The defendants proved, that the plaintiff had made inconsistent declarations at different times, when speaking of the occurrences at his house on the night of the alleged trespass; and that he or his wife had given two or three pairs of old pantaloons to Devaughan's slave, who had formerly belonged to Mrs. Heath's first husband.

The court charged the jury, at the request of the plaintiff, "that if Devaughn's slave had been an old family negro of the plaintiff's wife, then the plaintiff, or his wife, had a legal right to give said slave several pairs of old pantaloons, without the knowledge or consent of his master." The defendants excepted to this charge, and requested the court to instruct the jury, "that they can not give vindictive damages, unless they believe, from the evidence, that the defendants maliciously entered the plaintiff's lands, in a rude, aggravating, or insulting manner, and committed the trespass alleged in the complaint." The court refused to give this charge, and the defendants excepted; and they now assign as error the charge given, and the refusal of the charge asked.

ALLISON & ANDREWS, RICHARDS & FALKNER, for the appellants.

BROCK & BARNES, CHILTON & YANCEY, contra.

STONE, J.—The charge asked by the defendants in the court below, and refused by the court, assumes that, to justify the jury in awarding vindictive damages, in an action of trespass *quare clausum fregit*, the defendant must have entered the land *maliciously, in a rude, aggravating, or insulting manner*. These conjoint words evidently erected too strict a standard of liability. Trespasses might be so wantonly or recklessly committed, as to justify the imposition of vindictive damages, without any evidence of

actual malice towards the owner of the property trespassed upon. The word *aggravating* was probably employed as the synonym of *offensive*, or *insulting*, According to it this meaning, cases may be imagined, which would call for exemplary damages, when the act complained of was neither tumultuous, grossly abusive, contemptuous, nor strictly insulting. It has been ruled that, "in cases attended with circumstances of aggravation, the jury may give exemplary damages."—*Mitchell v. Billingsley*, 17 Ala. 394; *Parker v. Mise*, 27 Ala. 483. When the circumstances of the trespass are rude, or insulting, malice may be inferred from them. So, malice or ill-will may be found to exist, when there are no accompanying acts of rudeness or insult. The charge was properly refused.—2 Greenl. Ev. § 253, and note.

[2.] The charge given asserts, that Mrs. Heath had the legal right to give to Ralph, the slave of Mr. Devaughn, three or four pairs of old pantaloons, without the knowledge or consent of the latter. We have looked into this question with much care, and cannot find that the circuit court erred in giving this charge. The articles are harmless in their character, and, *if given*, could not possibly have injured Mr. Devaughn. We have no statute which forbids the giving of articles like these to slaves. The substance of the charge was, that Mrs. Heath had the right to abandon the ownership and possession of the property to the slave. When the gift was perfected by delivery, the articles became the property of Mr. Devaughn, the slave's master. In a leading case on this subject, (*Fable v. Brown*, 2 Hill's Ch. 397,) the court said, "If one having good title to personal property, should transfer it into the possession of a slave, this transfer would not be void; the title would be changed, but the title and possession must be referred to the master."—See, also, *Brandon v. Huntsville Bank*, 1 Stew. 341; *Trotter v. Blocker*, 6 Porter, 291; *Leech v. Cooley*, 6 Sm. & M. 93; Cobb on Slavery, § 262; *Williams v. Ash*, 1 How. U. S. 13.

The judgment of the circuit court is affirmed.