## Gordon R. Wood, as parent and next friend of Scott Wood v. Gaila Wood

[370 A.2d 191]

No. 49-76

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ. and Daley, J. (dissenting.)**

Opinion Filed February 4, 1977

*David L. Cleary* of *Richard E. Davis Associates, Inc.*, Barre, for Plaintiff.

*Charity A. Downs* of *Conley & Foote*, Middlebury, for Defendant.

**Barney, C.J.** This is a lawsuit brought by a young boy, a minor, through his father as guardian against his mother. The father is also suing on his own part based on his claim of responsibility for the boy's support, maintenance and the payment of necessary medical expenses.

The action asserts negligence relating to the use of firearms. By way of defense the mother asserts that Gordon Wood is not the custodian of Scott, nor the parent responsible for his maintenance, support and medical expenses, since she, Gaila, has been given custody of Scott by court order. Her pleading also asserts that any negligence that may have been involved in the incident upon which the suit is based was that of a third party not joined as a defendant in this action. The issue of Scott Wood's own negligence is also raised.

The litigation has not gone beyond the pleadings. A motion was filed below under V.R.A.P. 5(a) and granted, certifying to this Court the following question:

> Can the plaintiff (an unemancipated minor) in this case bringing suit through his father as next friend, assert a claim for injuries resulting from the alleged negligence of the mother, in this case, involving the use of firearms, where the record clearly discloses the existence of a single limit $100,000 homeowner's insurance policy which affords liability coverage for such negligence if established, or, is the minor child prevented from making such a claim by reason of any recognized bar to such interfamilial tort suits?

In responding to certified questions, there are certain limits which this Court is bound to observe. The most basic is the prohibition against advisory opinions set out in *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169 (1949), where it is stated concerning judicial power:

By no possible construction of the Constitution of this State can this power be enlarged to include the giving of an opinion upon a question of law not involved in actual and bona fide litigation brought before the Court in the course of appropriate procedure. Organically, courts are not instituted to render advisory opinions. (Citation omitted). A power to do so is in no wise incidental to the constitutional function of the judiciary of this State and no act of the Legislature can confer it.

The constraints are common to both certified questions and actions for declaratory judgment. See, e.g., *Lace* v. *U.V.M.*, 131 Vt. 170, 175, 303 A.2d 475 (1973). It is because of the limitations on this Court's authority to respond that it must make an analysis of the appropriateness of the certified question for resolution. The question submitted must not be premature, in that it must be a necessary part of the final disposition of the case to which it pertains. *Avery* v. *Bender*, 126 Vt. 342, 347, 230 A.2d 786 (1967). The question must not be vague or indefinite, *Wilbur* v. *U.V.M.*, 127 Vt. 283, 285-86, 247 A.2d 897 (1968), or subject to varying or imprecise answers. *Powers* v. *State Highway Board*, 123 Vt. 1, 5, 178 A.2d 390 (1962); *Miller Automobile Co.* v. *State Highway Board*, 126 Vt. 389, 390, 233 A.2d 48 (1967). It is the tradition of constitutional common law that the establishment of legal doctrine derives from the decision of actual disputes, not from the giving of solicited legal advice in anticipation of issues.

The question certified in this case not only deals with a doctrine of large potential impact in the area of family and tort law, but cuts across a number of policy concerns relating to the effect of insurance, the difference between kinds of agency of injury and even, perhaps, family law. We have no more than the pleadings before us, with denials of the allegations on which most of the issues depend. The question presented can, therefore, be entertained only in a limited context. The issue which this Court can answer relates to the vulnerability of the claim made against Gaila Wood, merely because it is her minor son who is bringing the action. Will that circumstance support a motion to dismiss as a matter of law?

Our response to that must be in the negative. Vermont law does not bar the institution of such a suit as a matter of law. There is no line of Vermont cases requiring reversal to establish the right to

institute such litigation, as was the case in New Hampshire, which recently recognized this same right. *Briere* v. *Briere*, 107 N.H. 432, 224 A.2d 588 (1966). Since this state has historically allowed other kinds of suits between parent and child, *Baker* v. *Baker*, 41 Vt. 55, 58 (1868), and has recently set aside interspousal immunity in *Richard* v. *Richard*, 131 Vt. 98, 300 A.2d 637 (1973), a contrary ruling on the right to bring suit would be anomalous. All of the policies relating to domestic tranquility, collusion and fraud, intrafamily harmony and the like have all been seen as insufficient to cut off the right to litigate a claim in these related contexts, and should not do so here.

Whether the suit can be sustained, or what limitations might be placed upon such actions based on their facts, have to be determined upon trial. *Briere* v. *Briere, supra*, 107 N.H. 432, 224 A.2d 588, 591 (1966). As the defendant's brief indicates, there is a great variation from state to state upon the right of recovery, as contrasted to the right to sue, according to the nature of the claim, the agency of the injury or even the presence or absence of insurance. These decisions must await the development of the facts.

*The question posed under V.R.A.P. 5(a), within the limitation expressed in the opinion, is answered by stating that the minor child is not prevented from making a claim for the negligent infliction of injuries by his mother by reason of their familial relationship, and the cause is remanded.*

**Daley, J.,** Dissenting. I cannot agree with the majority's decision to answer the legal issue presented by the parties. In view of the limited factual record before us, I believe that the majority's opinion responding to the propounded issue departs from this Court's practice of refusing to render advisory opinions. *Beecham* v. *Leahy*, 130 Vt. 164, 167, 287 A.2d 836 (1972); *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169 (1949).

The parties bring this matter before the Court pursuant to the provisions of Rule 5(a) of the Rules of Appellate Procedure. In my opinion, this rule contemplates the presence of an adequate factual record, supplied either by an agreed statement of facts or otherwise, so as to enable this Court to properly decide the case. R. Field, V. McKusick, and L. Wroth, Maine Civil Practice § 72.5, at 144 (2d ed. 1970). This Court has, on numerous occasions,

refused to answer certified questions where there was "nothing before us on the record to shed any light on the factual situation out of which the certified question has arisen". *State* v. *Elwell*, 131 Vt. 245, 248, 303 A.2d 134 (1973). See also *State* v. *Preston*, 132 Vt. 480, 482, 321 A.2d 37 (1974); *Powers* v. *State Highway Board*, 123 Vt. 1, 5, 178 A.2d 390 (1962).

The issue answered by the majority finds its sole factual basis in the allegations in the plaintiff's complaint. These allegations under our present rules of practice need not even set forth specific and detailed statements of the facts; see Reporter's Notes to V.R.C.P. 8(a). All material claims set forth in this complaint were denied by the defendant. Inasmuch as the method of review provided by V.R.A.P. 5(a) should be exercised with care and caution, *State* v. *Bailey*, 286 A.2d 603, 605 (Me. 1972), I believe it is inappropriate as a matter of policy for this Court to resolve an issue of wide-ranging implications in the area of tort and family law upon an inadequate factual record. While I may be in agreement with the majority on the doctrinal principle which is expounded, I cannot subscribe to the method employed to make the determination.